UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RAZONDA S. JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-157 |
| | ) | (JORDAN/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14, 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16, 17]. Plaintiff Razonda S. Jefferson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff received supplemental security income benefits as a child. A redetermination of those benefits was required when she attained the age of 18. On October 1, 2009, it was determined that the Plaintiff was no longer disabled and benefits ceased as of December 31, 2009. The decision was upheld by a State Agency Disability Hearing Officer. The Plaintiff then requested a hearing, which was held before ALJ Jack B. Williams, in Knoxville, Tennessee, on July 19, 2011. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on November 7, 2011, finding that the Plaintiff was not disabled. The

Appeals Council denied Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I.   **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant attained age 18 on December 12, 2008, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was no longer disabled as of December 31, 2009, based on a redetermination of disability under the rules for adults who file new applications.
>
> 2. Since December 31, 2009, the claimant has had the following severe impairments: *low vision, 20/400 OS, i.e., left-eye blindness, status-post failed corneal implant, with 20/50 best-corrected OD secondary to chronic iritis, glaucoma, and cataract; history of juvenile rheumatoid arthritis; borderline intellectual functioning with marginal literacy; and a depressive disorder, not otherwise specified* (20 CFR 416.920(c)).
>
> 3. Since December 31, 2009, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. The claimant is limited to *medium* exertional work. She is blind in her left eye and therefore must avoid hazards in order to safeguard vision in her right eye. She is precluded from concentrated exposure to temperature extremes and high humidity. She is precluded from work involving fine details or prolonged reading. She can understand, remember, and carry out 1- to 3-step tasks. She can maintain focus, attention, and concentration for at least 2-hour periods. She can interact casually with others and can adapt to routine changes in the workplace.
>
> 5. The claimant has no past relevant work. (20 CFR 416.965).

6. The claimant was born on December 13, 1990 and is *a younger individual age 18-49* (20 CFR 416.963).

7. The claimant has completed a high school education and is able to communicate in English; however, she is only marginally literate (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Since December 31, 2009, considering the claimant's age, education, and work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant's disability ended on December 31, 2009, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

[Tr. 14-22] (emphasis in the original).

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III. STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in two respects. First, the Plaintiff argues that the ALJ did not properly apply the treating physician rule to the opinion of Jay H. Warrick, M.D., Plaintiff's treating rheumatologist. [Doc. 15 at 11]. Second, the Plaintiff asserts that the testimony provided by the vocational expert ("VE") failed to provide substantial evidence that the Plaintiff could perform other jobs in the national economy because the hypothetical posed to the VE did not adequately covey the Plaintiff's visual limitations. [Id. at 15].

The Commissioner responds that the ALJ provided good reasons, supported by

substantial evidence, for according "little weight" to Dr. Warrick's opinion. [Doc. 17 at 4]. The Commissioner also contends that the ALJ's vocational hypothetical accurately conveyed the Plaintiff's visual limitations. [Id. at 8].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Jay H. Warrick, M.D.

The Plaintiff argues that the ALJ committed reversible error by failing to properly apply the treating physician rule to Dr. Warrick's opinion enumerated in a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." [Doc. 15 at 11]. In particular, the Plaintiff asserts that the ALJ failed to explain how Dr. Warrick's opinion was not supported by clinical findings and how it was inconsistent with the other evidence of record. [Id. at 13]. The Plaintiff maintains that "not only did the ALJ fail to provide 'good reasons' for dismissing the treating physician's opinion, he failed to provide any reasons." [Id.] (emphasis in the original).

The Medical Source Statement at issue was completed by Dr. Warrick on August 1, 2011. Therein, Dr. Warrick responded to a variety of short answer and multiple choice questions concerning the Plaintiff physical limitations due to her impairments. [Tr. 228-31]. Dr. Warrick opined that the Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently and could stand and/or walk at least two hours in an eight-hour workday. [Tr. 228]. Dr. Warrick noted that the Plaintiff's pauciarticular juvenile idiopathic arthritis was the cause of the above limitations. [Tr. 229]. In regard to the Plaintiff's postural limitations, Dr. Warrick opined that the Plaintiff could occasionally climb, kneel, crouch, crawl, and stop, and could

7

frequently balance. [Id.]. These activities, however, could only be performed for about one to two hours per day. [Id.]. Dr. Warrick also assessed environmental limitations including temperature extremes, humidity, and hazards created by machinery or heights. [Tr. 231]. He noted that exposure to these environmental factors would exacerbate the Plaintiff's joint pain. [Tr. 231]. The Plaintiff was reported to have no limitations in her ability to perform manipulative functions, push and/or pull arm and feet controls, or sit continuously (with normal breaks) throughout an eight-hour workday. [Tr. 229-30]. Finally, the Plaintiff's was noted to suffer from significant visual loss as a result of her arthritic condition. [Tr. 230].

In a letter accompanying the Medical Source Statement, Dr. Warrick explained that he had been treating the Plaintiff for several years and that the Plaintiff's arthritis was an inflammatory condition that resulted in joint pain and occasional inflammation of the eye. [Tr. 227]. In addition to sustaining significant visual loss, Dr. Warrick explained that although the Plaintiff did not suffer from joint deformities, she continued to experience joint pain on a daily basis. [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.

8

20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 992 (6th Cir. 2007).

In the disability decision, the ALJ provided the following discussion regarding Dr. Warrick's opinion:

> Little weight has been given to the *Medical Source Statement* completed by the claimant's treating rheumatologist, Jay H. Warrick, M.D., on July 29, 2011, in which he assessed that the claimant was limited to a reduced range of sedentary work (Exhibit 12E). While the undersigned recognizes the special consideration that should *normally* be given to a treating physician's opinion, Dr. Warrick's assessment is inconsistent with the record as a whole. A treating physician's opinion must only be entitled to controlling weight when it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record (20 CFR 404.1527, and Social Security Ruling 96-2p). Dr. Warrick's assessment is incredibly over-restrictive. His conclusions are, at best, tenuous and patently sympathetic to the claimant's subjective complaints.

[Tr. 20] (emphasis in the original).

As mentioned above, a treating physician's opinion is only entitled to controlling weight when the opinion is well-supported by clinical and laboratory techniques and is not inconsistent

9

with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). In the present matter, the ALJ found that Dr. Warrick's assessment was not entitled to controlling weight because it was inconsistent with the body of evidence and it was too restrictive. [Tr. 20]. However, after an ALJ finds a treating physician's opinion is not entitled to controlling weight, the ALJ is supposed to give "good reasons" for the weight the opinion is given. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 377 (6th Cir. 2013) ("The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician's rule that is at the heart of this regulation.").

Here, the ALJ's sole conclusory statement that Dr. Warrick's "assessment is inconsistent with the records as whole" without further explanation is unacceptable. The abrupt conclusion prevents the Court from partaking in any meaningful judicial review of the ALJ's finding. The ALJ was required to analyze the opinion pursuant to the regulation's guidelines for weighing a treating physician's opinion. See Allen v. Astrue, No. 3:12-CV-4, 2013 WL 958306, at *5 (E.D. Tenn. Mar. 12, 2013) (stating that the good reasons requirements is to prevent the scenario of the ALJ giving no weight to the treating-source opinion without first sufficiently balancing the required factors). More specifically, the ALJ did not mention the length of treatment, frequency of examination, the nature and extent of the treatment relationship, and Dr. Warrick's specialization. There is simply no meaningfully discussion of Dr. Warrick's treating relationship with the Plaintiff which began in 1999. While the Commissioner argues that the ALJ considered other evidence, namely treatment notes by other examining and non-examining sources as well as the Plaintiff's credibility [see Doc. 17 at 6-8], "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient

10

evidence in the record of the ALJ to discount the treating source's opinion and, thus a different outcome on remand is unlikely." Wilson, 378 F.3d at 546. Simply put, the ALJ failed to provide any indication that he considered the section 1527(c)(2) factors when he assigned "little weight" to Dr. Warrick's opinion. Accordingly, the Court finds that the ALJ did not properly apply the treating physician rule.

The Court must now consider whether the ALJ's error was harmless. A violation of the "good reasons" rule can be deemed "harmless error" if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted).

As an initial matter, the Court finds that the ALJ credited Dr. Warrick's opinion to a certain extent, so the first exception does not apply. In addition, the assigned residual functional capacity is clearly inconsistent with Dr. Warrick's assessment, and thus, the second exception does not apply.

In regard to the whether the goal of section 1527(c)(2) was met, the Court considers Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006) in which the Sixth Circuit found that the ALJ met the third prong of the harmless error analysis by discussing other medical evidence in the record which indirectly attacked the consistency and supportability of the treating physician's opinion. In Nelson, the plaintiff claimed he was disabled due to several mental impairments. Id. at 463. The record contained opinions from two treating psychiatrists who had completed a questionnaire regarding the plaintiff's mental ability to do work related activities.

11

Id. at 466. Both psychiatrists related marked limitations in the plaintiff's ability to make occupational adjustments. Id. at 466-67. In the disability decision, the ALJ failed to discuss what weight he assigned to the treating sources' opinions and concluded that the plaintiff was capable of returning to his past relevant work. Id. at 467.

The Sixth Circuit found that although the ALJ's discussion failed to satisfy the treating physician rule, including the "good reasons" requirement, the ALJ's discussion of other medical evidence sufficiently undermined the supportability and consistency of the treating sources' opinions, and thus, the ALJ's error was harmless. Id. at 470-71. Specifically, the court of appeals noted that the treating sources' opinions were in "obvious conflict" with the opinions of five other medical sources, four of which were discussed by the ALJ. Id. at 471. Because the ALJ discussed the contrary findings of these four other sources and explicitly stated that he found them consistent with one another, the court of appeals found that the ALJ had indirectly satisfied the goal of section 1527(c): "[w]e think it clear that the ALJ's discussion of the record evidence shows that the ALJ found the opinions . . . to be inconsistent with the other record evidence." Id. The Sixth Circuit cautioned, however, "that this is a rare case of the ALJ's analysis meeting the goal of the rule even if not meeting its letter." Id. at 472.

In the present matter, the Court finds that this is not the rare case where the ALJ's discussion of other record evidence implicitly satisfied the goal of section 1527(c). In particular, the ALJ gave credence to the residual functional capacity assessment completed by state agency medical consultant Susan L. Warner M.D., noting that the opinion was due "some weight" because it was based on a review of the "**complete case record**." [Tr. 21] (emphasis in the original). However, as pointed out by the Plaintiff [Doc. 15 at 13], Dr. Warner's opinion does not take into account any of the treatment or findings made by Dr. Warrick, including Dr.

12

Warrick's July 2011 opinion as such opinion was authored after Dr. Warner assessed her opinion. [Tr. 362]. Rather, Dr. Warner relied on a consultative examination performed by Brandon A. Cincere, M.D., on September 13, 2009 [Tr. 300-03], and a new patient evaluation performed by Umang L. Shah, M.D., on November 14, 2009 [Tr. 334-35].[1] The Court is not persuaded that reliance on a nonexamining state agency's opinion that was not in fact assessed by a complete review of the record was sufficient to meet the goal of section 1527(c). See Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983) (holding that "[i]t is well settled that the opinions of treating physicians should be given greater weight than those held by physicians the Secretary hired").

Similarly, the only medical evidence discussed by the ALJ regarding the Plaintiff's arthritic condition was Drs. Cincere's and Shah's examination. [Tr. 18]. The Court is again unpersuaded that reliance on a one-time consultative and new patient examination provided substantial evidence that Dr. Warrick's opinion is inconsistent or unsupported by the record as a whole. As discussed by the ALJ [Tr. 18], Dr. Cincere opined that while the Plaintiff had significant visual limitations, she did not have any physical limitations. [Tr. 303]. Upon examination, Dr. Cincere found that the Plaintiff demonstrated no obvious joint deformities or swelling, there was no appearance of discomfort with palpation, and she had a full range of motion and 4+/5 motor strength throughout her bilateral upper and lower extremities. [Tr. 302]. Dr. Shah found that the Plaintiff had swelling in her right knee and second and third metacarpal phalangeal joints, but experienced minimal tenderness to palpation and had a full range of motion. [Tr. 335]. However, the Plaintiff's TM joint had "somewhat decreased range of

---

[1] Dr. Warner also relied on a Psychological Evaluation and Report of Mental Status [Tr. 307-10], which is not at issue here, and a vision consultative examination [Tr. 296-97], which is addressed in the following section of this report and recommendation. However, as to the Plaintiff's arthritic condition, Dr. Warner does not appear to rely on any other evidence in addition to Drs. Cincere's and Shah's one-time examinations.

13

movement." [Id.]. Dr. Shah assessed juvenile rheumatoid arthritis and referred the Plaintiff to Dr. Warrick since Dr. Warrick had treated the Plaintiff for several years for this condition. [Id.]. Without more, the Court finds that this case in unlike Nelson where the medical evidence discussed by the ALJ overwhelming contradicted a treating physician's opinion. While Dr. Cincere's opinion is directly at odds with Dr. Warrick's, Dr. Shah's examination can hardly be said to bolster's Dr. Cincere's conclusion any more than it could be argued that it contradicts Dr. Warrick's findings.

The Court notes that a proper analysis of the record might not support giving controlling weight to Dr. Warrick's opinion. However, the Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." Gayheart, 710 F.3d at 380 (brackets in original) (quoting Cole v. Astrue, 661 F3d 931, 939 (6th Cir. 2011)).

Accordingly, the Court will recommend that the case be remanded to the ALJ for clarification of the weight accorded to the opinion of the Plaintiff's treating physician, Dr. Warrick, and the reasons for according such weight pursuant to the factors set forth in 20 C.F.R. § 1527(c)(2).

### B. Vocational Hypothetical

The Plaintiff argues that the vocational hypothetical posed to the VE failed to adequately convey her visual limitations. [Doc. 15 at 15]. More specifically, the Plaintiff contends that the hypothetical failed to fully express the limitations she experiences in her right eye. [Id. at 15-16].

During the hearing, the ALJ posed the following hypothetical to the VE:

> Assume if you will a younger individual who's 20 years of age,

14

and I'm going to assume that she has marginal literacy with no past
relevant work. Assume that she has 20/400 vision or essentially
blindness of her left eye. In the right eye, I want to assume that her
distant vision is 20/50, and her near vision is 20/40. I think that the
field of vision is mildly reduced enough she must avoid hazards.
It's reduced by the fact that she has had surgeries, and also by the
fact that she's only using one eye. Assume from a physical
standpoint that she's capable of medium exertion. Assume that she
cannot perform work requiring the ability to see fine details or to
read for prolonged periods at a time. I'm thinking that she could
read written instructions that's printed in normal type, but – and if
it could be read in a few minutes, but not perform a job where she
had to be constantly doing that or doing that for very prolonged
periods. She can focus, attend and concentrate for two hours
periods. She can interact casually with others, and can adapt to
routine work changes. With those limitations, are there jobs that
could be performed?

[Tr. 49-50]. The VE responded that the above hypothetical person would be capable of performing other jobs in the national and local economy including a hand packager, machine cleaner, and laundry laborer. [Tr. 50-51].[2]

The Plaintiff argues that the ALJ erred by not providing additional functional limitations "beyond generally avoiding hazards or 'prolonged reading.'" [Doc. 15 at 15]. The Plaintiff points to certain evidence within the record for the proposition that the hypothetical did not adequately convey the Plaintiff's ability to use her right eye. The Plaintiff first cites to Knox County School records where she was treated as visually impaired while in school. [Id. (citing Tr. 246-49)]. The Plaintiff testified that while she was not required to take any special education classes, she did receive extra help in school including large print books and help from her teachers. [Tr. 34-35]. The Plaintiff further testified that her vision in her right eye comes and

---

[2] The Court notes that the ALJ asked a second hypothetical which included environmental limitations and a third hypothetical which included hand manipulation/coordination limitations. [Tr. 51]. The VE then provided other examples of available jobs given those additional limitations. [Tr. 51-52]. The first hypothetical, however, is the only one at issue as it addresses the visual limitations that are challenged by the Plaintiff. Thus, the Court will not engage in any analysis regarding the second or third hypotheticals.

15

goes, resulting in only two to three "good" days per week. [Tr. 39]. On "good" days, she is able to watch TV for 30 to 45 minutes, and on a "bad" days she is able to read 15 to 20 minutes depending on the font size. [Tr. 40]. The Plaintiff also cites to a psychological evaluation conducted by Mary L. Barker, M.S., wherein Ms. Baker noted that during the evaluation she walked up beside the Plaintiff who was unaware of Ms. Baker's presence until the Plaintiff was spoken to. [Tr. 307]. In addition, Ms. Baker noted that while the Plaintiff completed several intelligence and achievement tests, she did not believe that the Plaintiff could see well enough to yield valid test results based upon a review of the Plaintiff's answer. [Tr. 309].

The Commissioner argues that the ALJ adequately conveyed the Plaintiff's right eye limitations. [Doc. 17 at 9]. The Commissioner cites to the consultative examination conducted by Stephen R. Franklin, M.D., in August 2008 where he found the Plaintiff's vision in her right eye was 20/50 best corrected at a distance and 20/40 near. [Tr. 296]. A second consultative examination which was conducted by Dr. Cincere in September 2009, verified the Plaintiff's vision in her right eye was 20/50 when corrected. [Tr. 302]. As to Ms. Baker's remarks regarding the Plaintiff's test performance, the Commissioner argues that the ALJ accounted for this by finding that the Plaintiff could not read for more than a few minutes at a time. [Id. at 10]. In addition, the Commissioner cites to various treatment notes from UT Internal Medicine where Plaintiff denied upon examination in 2010 and 2011 that she had been experiencing double or blurred vision. [Id. (citing Tr. 449, 477, 486, 492]. Finally, the Commissioner cites to the Plaintiff's testimony in which the Plaintiff stated that she had a valid driver's license although she is required to drive with her glasses and cannot drive after dark. [Id. (citing Tr. 35)].

In order for substantial evidence to support an ALJ's reliance on a VE's answer to a hypothetical question, the question must accurately reflect a plaintiff's physical and mental

16

impairments. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). After thoroughly reviewing the evidence of record, the Court finds that the hypothetical adequately conveyed the Plaintiff's functional limitations as it pertains to her right eye impairment. In this case, the ALJ properly included Drs. Franklin's and Cincere's findings regarding the Plaintiff's distant and near vision acuity. Dr. Franklin further opined that the Plaintiff could not drive or operate machinery. [Tr. 297]. This conclusion was similarly expressed by state agency physician Dr. Warner who opined that the Plaintiff should avoid moving hazards in the workplace. [Tr. 357]. The ALJ likewise conveyed this limitation by including a restriction against hazards. While the Court agrees with the Plaintiff in part that the ALJ could have done a better job at quantifying the limitation against "prolonged reading," the ALJ did provide some context for the limitation. Specifically, the ALJ stated that the Plaintiff could only read for a *few minutes* and that she would not be able perform a job that required her to constantly read. In addition, the Court observes there is no limitation assessed by any medical source in the record indicating that the Plaintiff cannot read normal size print. Although the Court realizes that large print may be a more suitable accommodation for the Plaintiff's impairment, the Court finds that the ALJ's restriction against fine print and limiting the Plaintiff to reading normal print for only a few minutes was not patently deficient in describing the Plaintiff's visual limitations to the VE.

Furthermore, to the extent that the Plaintiff argues that additional limitations should have been included in light of her testimony that she only has two to three "good" days per week, the Court disagrees. The ALJ was required to only include those limitations that he accepted as credible. See Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. 2007) (holding that "the ALJ is required to incorporate only those limitations that he accepts as credible" in

17

fashioning a vocational hypothetical) (citing Casey v. Sec'y of HHS, 987 F.2d 1230, 1235 (6th Cir. 1993)). In the disability decision, the ALJ specifically noted that the Plaintiff's testimony concerning the number of "good" days she experiences as a result of her vision was not entirely credible given her reported daily living activities. [Tr. 20]. Because the Plaintiff has not alleged any error regarding the ALJ's credibility finding, the Court will not disturb the ALJ's conclusion in this respect and declines to make a finding that further limitations were warranted as a result of the Plaintiff's testimony.

Accordingly, the Plaintiff's allegation of error in this regard is not well-taken.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Summary Judgment [**Doc. 14**] be **GRANTED in part** and **DENIED in part**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED in part** and **DENIED in part**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the ALJ to explain the weight accorded to the opinion of the Plaintiff's treating physician and the reasons for according such weight.

                                        Respectfully submitted,

                                          s/ C. Clifford Shirley, Jr.
                                        United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).